UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RUSTY PATTON,

        Plaintiff,

v.

MUSKINGUM COUNTY
PROSECUTOR MICHAEL HADDOX, et al.,

        Defendants.

Case No. 2:10-cv-743
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (Doc. # 6), Plaintiff's Memorandum Contra the State Defendants Motion to Dismiss (Doc. # 8), Defendants' Reply to Plaintiff's Memorandum Contra Defendants' Motion to Dismiss (Doc. # 9), and Plaintiff's Response to Defendants' Reply to Memorandum Contra ("Plaintiff's Motion to File a Surreply") (Doc. # 12). For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion to File a Surreply.

**I.  Background**

These facts are taken from Plaintiff's second amended complaint.[1]  (Doc. # 5.)

On August 15, 2008, Plaintiff filed an animal cruelty complaint against Muskingum County Ohio Humane Officer Beaulah Hague, Muskingum County Ohio Dog Warden Brian

---

[1] Plaintiff failed to file this document in accordance with the Federal Rules of Civil Procedure, which allows one amendment as a matter of course and requires all others to be filed with the opposing party's written consent or by leave of court.  See Fed. R. Civ. P. 15(a)(2). Defendants, however, offer their written consent to the amendment for purposes of decision on Defendants' Motion to Dismiss.  (Doc. # 6 at 3 n.2.)

Catlin, and Muskingum County Ohio Assistant Dog Warden Tye Boyd. In the complaint Plaintiff claimed that these three individuals were guilty of cruelty against his dog while the dog was in Muskingum County's custody. Plaintiff does not specify the specific type of cruelty his dog was alleged to have suffered, but he does indicate that his son put a flower on the dog's grave. Thus, it appears that the alleged cruelty resulted in the death of the dog. Plaintiff has named Officer Hague, Warden Catlin, and Assistant Warden Boyd as defendants in the instant action.

      Muskingum County Ohio Sheriff's Captain Joe Miller investigated Plaintiff's animal cruelty complaint. Scott A. Heiser, the senior attorney and director for the Animal Legal Defense Fund, offered to provide Captain Miller additional resources at no cost with which to conduct the investigation. Captain Miller refused the offer.

      Plaintiff claims that Captain Miller's investigation resulted in defamatory accusations against Plaintiff. Captain Miller allegedly "bragged up" the character of the Muskingum County witnesses "while tearing down" the character of Plaintiff's witnesses and intimidating them. (Doc. # 5 at ¶5.) Captain Miller allegedly allowed Officer Hague to change her story three times. Plaintiff claims that the investigation caused his young son to suffer mental anguish. Plaintiff believes that Captain Miller's intent was to cover up the truth. Plaintiff has named Captain Miller as a defendant in this action.

      The Muskingum County Ohio Prosecuting Attorney Michael Haddox declined to prosecute anyone for the alleged animal cruelty. Plaintiff alleges that Prosecutor Haddox lied on a recorded phone call, allowed a witness to change her eyewitness account, offered no words of support for the neglected animal, and did not accept evidence presented by Plaintiff. Prosecutor

Haddox accepted as accurate the investigation of Captain Miller and denied the offer of additional resources proposed by the director for the Animal Legal Defense Fund. Plaintiff named Prosecutor Haddox as a defendant in this action.

Plaintiff also names as defendants Muskingum County Ohio Sheriff Robert J. Stevenson, Muskingum County Ohio Commissioners Dorothy Montgomery, John Bates, and Brian Hill, Muskingum County Ohio Human Resources Director Michelle Campbell, Muskingum County Ohio, and the City of Zanesville, Ohio. All individual defendants are sued in their individual and official capacities.

The City of Zanesville is the only defendant that has not joined in Defendants' Motion to Dismiss.

## II.  Plaintiff's Motion to File a Surreply

Plaintiff has filed a surreply without first requesting permission to do so. Rule 7.2 of the Local Rules of this Court provides that only supporting, opposing, and reply memoranda may be filed "except upon leave of court for good cause shown." S. D. Ohio Civ. R. 7.2(a). Plaintiff has failed to offer good cause for filing a surreply. Accordingly, the Court **DENIES** Plaintiff's Motion to File a Surreply. The Court notes, however, that nothing in Plaintiff's surreply would alter this Court's decision granting Defendants' Motion to Dismiss.

## III.  Defendants' Motion to Dismiss

Defendants move to dismiss all of Plaintiff's claims for relief for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted. In their motion to dismiss, Defendants frame Plaintiff's claims as eleven separate claims for relief. Plaintiff does not dispute that these eleven claims encompass all of the claims that he has alleged in the

second amended complaint.  This Court finds that Defendants' assessment that the second amended complaint contains eleven claims is a generous classification that includes all claims that could be made in reliance upon the facts Plaintiff sets forth.  The eleven claims include four federal claims, five state law claims, and two claims that could be filed under federal or state law:

1.  Failure of Prosecutor Haddox to file criminal charges under 42 U.S.C. § 1983;

2.  Prosecutorial misconduct by Prosecutor Haddox under 42 U.S.C. § 1983;

3.  Failure of Captain Miller to adequately investigate under 42 U.S.C. § 1983;

4.  Municipal liability under 42 U.S.C. § 1983;

5.  Slander/libel under 42 U.S.C. § 1983 and/or under state law;

6.  Civil conspiracy under 42 U.S.C. § 1985 and/or state law;

7.  Intentional infliction of emotional distress under state law;

8.  Perjury under state law;

9.  Obstruction of justice under Ohio Revised Code § 2921.32(A)(4)-(6);

10.  Tampering with evidence under Ohio Revised Code § 9.01(1)-(5); and

11.  Animal cruelty under Ohio Revised Code §§ 959.13 and 959.131(c).

**A. Standards**

    **1. Fed. Rule Civ. P. 12(b)(1)**

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure attack the subject matter jurisdiction of this Court and generally come in two varieties.

> A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading.  In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.

> On the other hand, when a co urt reviews a complaint under a factual attack, as here, no presumptive truthfulness applies to the factual allegations. Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 1364, at 662-64 (West 1969). When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted).

*See also Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); *Nat'l Assoc. of Minority Contractors v. Martinez*, 248 F. Supp.2d 679, 681 (S.D. Ohio 2002).

### 2. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (clarifying the plausibility standard articulated in *Twombly*). To be considered plausible, a claim must be more than merely conceivable. *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## B. 42 U.S.C. § 1983

Five of Plaintiff's claims appears to have been filed under 42 U.S.C. § 1983

("Section1983"), which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To prevail on a Section 1983 claim, a plaintiff must satisfy two prongs: (1) a constitutional deprivation; (2) by a person acting under the color of state law. *Adair v. Charter County of Wayne*, 452 F.3d 482, 491-92 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1. Failure to bring criminal charges and prosecutorial misconduct

Plaintiff's first two claims are for failure to bring criminal charges and prosecutorial misconduct filed against Prosecutor Haddox. Plaintiff claims that Prosecutor Haddox's conduct violated his federal civil rights and his right to constitutional due process. Prosecutor Haddox argues that he is entitled to absolute immunity from these claims. Prosecutor Haddox's argument is well taken as it relates to the claims filed against him in his personal capacity.

#### a. Personal capacity claims

The United States Supreme Court has held that prosecutors in their personal capacities are absolutely immune from suits for monetary damages "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Actions falling

within the scope of this advocacy function are defined as those "intimately associated with the judicial phase of the criminal process[.]" *Id.* at 430. Furthermore, such immunity cannot be overcome by allegations of malice. *Id.* at 427. Courts use a "functional approach" to determine whether prosecutorial immunity is available to protect an official from liability for the particular activities alleged to have violated a plaintiff's rights. *Id.* Thus, courts must look to the "nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229(1988)). Furthermore, courts must also focus "on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Id.* 509 U.S. at 271 (citing *Imbler*, 424 U.S. at 431).

Plaintiff contends that although probable cause existed to charge Humane Officer Hague, Dog Warden Catlin, and Assistant Dog Warden Boyd for animal cruelty, Prosecutor Haddox failed to charge them. Further, Plaintiff claims that Prosecutor Haddox declined to accept evidence from Plaintiff, told Officer Hague that it was acceptable to "change her story," and had "not one word to say in support of the dog that was neglected cruelly." (Doc. # 5 at ¶9.)

While it is not always clear whether a given action falls within the prosecutor's advocacy function, there is little doubt that evaluation of a citizen complaint and the decision not prosecute do. Indeed, the Sixth Circuit has specifically held that a prosecutor's decision not to prosecute is entitled to absolute immunity. *See Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997) (the immunity extends to a prosecutor's decision on whether or not to prosecute a case); *Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003) ("The decision on whether or not to prosecute is unquestionably advocacy and is at the heart of the *Imbler* holding."); *Coon v. Froehlich*, 573 F.

Supp. 918 (S.D. Ohio 1983) ("prosecutors must be absolutely immune from civil suit for decisions not to prosecute because of their absolute immunity for decisions to initiate criminal proceedings").

Further, "[a]bsolute prosecutorial immunity will likewise attach to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution." *Ireland*, 113 F.3d at 1447 ("In this role, a prosecutor is unquestionably functioning as an advocate for the state in the judicial process, and absolute immunity is fully justified because the integrity of the judicial system depends in large part upon a prosecutor's ability to exercise independent judgment in deciding whether and against whom to bring criminal charges."). "Sixth Circuit precedent has established that 'the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process.' " *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (quoting *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993) and *Joseph v. Patterson*, 795 F.2d 549, 554 (6th Cir. 1986)).

Here, the Court finds that because the investigation at issue was tied to the decision whether or not to prosecute Plaintiff's complaint of animal cruelty, Prosecutor Haddox's investigatory acts were within his function as an advocate. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's claims against Prosecutor Haddox in his personal capacity.

    **b. Official capacity claims**

Plaintiff also alleges his claims for failure to prosecute and prosecutorial misconduct against Prosecutor Haddox in his official capacity. " 'In an official capacity action, the plaintiff

8

seeks damages not from the individual officer, but from the entity for which the officer is an agent.' " *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) (quoting *Pusey*, 11 F.3d at 657). " '[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.' " *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159 (1985)). Because absolute immunity is a personal defense, it is unavailable in an official capacity action. *See id.* (citing *Graham*, 473 U.S. at 166-67).

The only immunities that can be claimed in an official capacity action are forms of sovereign immunity that the entity may possess, such as the Eleventh Amendment to the United States Constitution. *Id.* (citing *Graham*, 473 U.S. at 167). The Eleventh Amendment bars Section 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages. *See Graham*, 473 U.S. at 169. "Whether a county prosecutor is deemed a 'state official' depends, at least in part, on state law." *Cady*, 574 F.3d at 342 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (holding that whether an entity should be treated as "an arm of the State" rather than as a municipal corporation "depends, at least in part, upon the nature of the entity created by state law")). The Sixth Circuit in *Pusey*, "held that city prosecutors are considered state officials under Ohio law when they 'are responsible for prosecuting state criminal charges.' " *Id.* (citing *Pusey*, 11 F.3d at 657). "Thus, a city official pursues her duties as a state agent when enforcing state law or policy." *Pusey*, 11 F.3d at 657

Consequently, this Court concludes that Prosecutor Haddox, like the prosecutor in *Pusey*, was in fact acting as an agent of the state and that Plaintiff's suit against him in his official capacity is barred by the Eleventh Amendment. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's claims filed against Prosecutor Haddox in his

9

official capacity.

### 2. Failure to adequately investigate

Plaintiff's third federal claim is for failure to adequately investigate, filed against Captain Miller. Plaintiff alleges that Captain Miller deliberately lied and acted with reckless disregard of the truth when investigating his complaint of animal cruelty. Defendants argue, *inter alia*, that Captain Miller is qualifiedly immune from this claim. This Court agrees.

"The affirmative defense of qualified, or good faith, immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Gardenhire v. Schubert*, 205 F.3d 303, 310-11 (6th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation marks omitted)). The burden is on the plaintiff to establish that the defendant official's conduct violated a right so clearly established that any official in his position would have understood that he was under an affirmative duty to refrain from such conduct. *Id.* (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992)).

The Court evaluates this burden by determining (1) whether the facts alleged or shown by Plaintiff make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of Captain Miller's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009). Both elements of the qualified immunity test must be met for Plaintiff to overcome the qualified immunity defense. Contrary to Defendants' assertion, the Court may first address either of the two prongs and need not address the remaining prong if unnecessary. *See Pearson*, 129 S. Ct. at 818 ("The judges of the district

courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Here, the Court finds it necessary only to address the second prong, *i.e.*, whether the right asserted was clearly established.

> A right is "clearly established" for qualified immunity purposes if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Smoak* [*v. Hall*], 460 F.3d [768,] 778 [(6th Cir. 2006)]; *Feathers* [*v. Aey*], 319 F.3d [843,] 848 [(6th Cir. 2003)]. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. If no reasonably competent officer would have taken the same action, then qualified immunity should be denied; however, "if officers of reasonable competence could disagree on [the legality of the action], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As the Supreme Court has explained, "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205. Qualified immunity leaves government authorities "ample room for mistaken judgments." *Scott v. Clay County*, 205 F.3d 867, 873 n.9 (6th Cir. 2000) (citations omitted). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.

*Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007). "When conducting an inquiry to determine whether a constitutional right is clearly established, the law of our circuit requires us to look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to the decisions of other circuits." *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991) (citing *Masters v. Crouch*, 872 F.2d 1248, 1251-52 (6th Cir. 1989)).

In Defendants' Motion to Dismiss, Defendants argue that Captain Miller's actions did not implicate any clearly established right. Defendants specifically state that Plaintiff "can come forward with no case law from the United States Supreme Court, the Sixth Circuit, or any other circuit that would have put [Miller] on notice that it would be unconstitutional to take the actions

11

[he] allegedly took."  (Doc. # 6 at 14-15.)  Plaintiff does not respond to this argument.  Consequently, Plaintiff has failed to establish that Miller's official conduct violated a right so clearly established that any official in his position would have understood that he was under an affirmative duty to refrain from such conduct.  *See Gardenhire*, 205 F.3d at 310-11.

Thus, Captain Miller is entitled to qualified immunity on this claim for relief and the Court need not address the first prong of the qualified immunity analysis, *i.e.*, whether Plaintiff sufficiently alleged the deprivation of a constitutionally protected right.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's claim against Captain Miller for failure to adequately investigate his animal cruelty complaint.

### 3.  Defamation and denial of procedural due process

Plaintiff, in his fourth federal claim, alleges that during the investigation of Plaintiff's complaint of animal cruelty, Captain Miller and Prosecutor Haddox engaged in a "smear campaign" against Plaintiff that resulted in defamation of his character.  Plaintiff claims that this, *inter alia*, resulted in his deprivation of due process of law.

Defamation is a false written (libel) or spoken (slander) publication, "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession."  *A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Building & Construction Trades Council*, 73 Ohio St. 3d 1, 7 (Ohio 1995) (citations omitted).  To be actionable under Section 1983, the defamation must "satisfy the 'stigma-plus' standard established by *Paul v. Davis*, which requires a plaintiff to demonstrate the infringement of 'some more tangible interest[]' than reputation alone, 'such as employment.'  424 U.S. 693 (1976)."

12

*Harris v. Detroit Pub. Sch.*, 245 Fed. Appx. 437, 444 (6th Cir. 2007); *see also Fullmer v. Mich. Dep't of State Police*, 360 F.3d 579, 581 (6th Cir. 2004) ("Due process analysis is triggered only where the 'stigma of damage to a reputation is coupled with another interest, such as employment,' a requirement that has come to be known as the 'stigma-plus' test.") (citations omitted); *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) ("Some alteration of a right or status 'previously recognized by state law,' such as employment, must accompany the damage to reputation.") (citation omitted).

Because Plaintiff here has not alleged the deprivation of a constitutionally protected right or interest, his defamation allegations do not rise to the level of a federal claim recognizable under Section 1983. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's federal claims of slander and/or libel.

**4. Municipal liability**

Plaintiff's fifth federal claim is filed against Muskingum County, Ohio. Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). A plaintiff may only hold a local government entity liable under Scetion 1983 for the entity's own wrongdoing. *Id.* A government entity violates Section 1983 where its official policy or custom serves to deprive an individual of his or her constitutional rights. *Id.*

Defendants contend that, even if Plaintiff could demonstrate a constitutional deprivation sufficient to justify relief under Section 1983, his claim against the County of Muskingum would still fail because Plaintiff has not alleged that Defendants acted pursuant to a state policy or custom. This Court agrees. The second amended complaint contains nothing that could possibly

be construed as alleging that the individual defendants acted pursuant to a custom or policy. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to any claims filed against Muskingum County, Ohio.

**C.  42 U.S.C. § 1985**

Plaintiff's sixth and final federal claim is civil conspiracy filed under 42 U.S.C. § 1985 ("Section 1985").  Section 1985(3) provides in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To prevail on a § 1985(3) claim, a plaintiff must show " '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' " *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)).  Additionally, Plaintiff must demonstrate that the conspiracy was motivated by race or class-based animus.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (stating that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions").

Here, Plaintiff fails to assert any racial or class-based animus.  Consequently, Plaintiff has failed to state a Section 1985 that is plausible on its face.  Accordingly, the Court **GRANTS**

Defendants' Motion to Dismiss as it relates to Plaintiff's Section 1985 claim for relief.

### D. State Law Claims

Because the Court by this Opinion and Order disposes of all of Plaintiff's federal claims filed against the moving defendants, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over the state law claims filed against the moving defendants. Consequently, Plaintiffs' state law claims are **DISMISSED** without prejudice.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *see Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").

### IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's federal claims and **DISMISSES** without prejudice Plaintiff's state law causes of action filed against the moving defendants.  (Doc. # 6.)  The Clerk is **DIRECTED** to **ENTER JUDGMENT**, in accordance with this Opinion and Order, against Plaintiff and in favor of Michael Haddox, Robert J. Stevenson, Joe Miller, Dorothy Montgomery, John Bates, Brian Hill, Michelle Campbell, Beaulah Hague, Brian Catlin, Tye Boyd, and Muskingum County, Ohio.

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**